Jason M. Drangel (JD 7204)
jdrangel@ipcounselors.com
Ashly E. Sands (AS 7715)
asands@ipcounselors.com
Danielle S. Futterman (DY 4228)
dfutterman@ipcounselors.com
Nabeela M. Hanif
nhanif@ipcounselors.com
Gabriela N. Nastasi
gnastasi@ipcounselors.com
Karena K. Ioannou
kioannou@ipcounselors.com
EPSTEIN DRANGEL LLP
60 East 42nd Street, Suite 2520
New York, NY 10165
Telephone: (212) 292-5390
Facsimile: (212) 292-5391
*Attorneys for Plaintiff*
*Mattel, Inc.*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MATTEL, INC., <br><br> *Plaintiff* <br><br> v. <br><br> WWW.FISHER-PRICE.ONLINE, <br><br> *Defendant* | **CIVIL ACTION NO.: 21-cv-9608 (LJL)** <br><br> **1) TEMPORARY RESTRAINING ORDER; 2) ORDER RESTRAINING DEFENDANT'S WEBSITE AND DEFENDANT'S ASSETS WITH THE FINANCIAL INSTITUTIONS; 3) ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE; 4) ORDER AUTHORIZING BIFURCATED AND ALTERNATIVE SERVICE; AND 5) ORDER AUTHORIZING EXPEDITED DISCOVERY** <br><br> **FILED UNDER SEAL** |

**GLOSSARY**

| Term | Definition |
|---|---|
| **Plaintiff or Mattel** | Mattel, Inc. |
| **Defendant** | www.fisher-price.online |
| **Mattel** | A leading designer, developer, marketer, manufacturer and distributor of its well-known Mattel Products (defined *infra*), including children's toys and games offered under some of America's most iconic and influential sub-brands, such as Fisher Price, Barbie, UNO, Thomas & Friends, Hot Wheels and American Girl |
| **Fisher-Price** | Plaintiff's wholly owned subsidiary that produces educational toys for infants, toddlers and preschoolers, along with developing character-based toys for children's programming such as Thomas & Friends. Some of Fisher-Price's most popular brands include Power Wheels, Laugh & Learn, Little People and Imaginext |
| **Cloudflare** | Cloudflare, Inc., with an address of 101 Townsend Street, San Francisco, California 94107, and any and all affiliated companies, which operate a cloud-based web infrastructure platform, available at www.cloudflare.com, that enables capabilities to host static websites on a content delivery network |
| **Dynadot** | Dynadot, LLC, with an address of 210 S Ellsworth Ave #345 San Mateo, California 94401, and any and all affiliated companies, which operate an ICANN accredited domain name registrar and web hosting company, available at www.dynadot.com, that allows consumers to register domain names and create websites |
| **Epstein Drangel** | Epstein Drangel LLP, counsel for Plaintiff |
| **New York Address** | 244 Madison Ave, Suite 411, New York, NY 10016 |
| **Complaint** | Plaintiff's instant Complaint |
| **Application** | Plaintiff's *ex parte* application for: 1) a temporary restraining order; 2) an order restraining Defendant's Website (as defined *infra*) and Defendant's Assets (as defined *infra*) with the Financial Institutions (as defined *infra*); 3) an order to show cause why a preliminary injunction should not issue; 4) an order authorizing bifurcated and alternative service; and 5) an order authorizing expedited discovery |
| **Moore Dec.** | Declaration of Michael Moore in Support of Plaintiff's Application |
| **Futterman Dec.** | Declaration of Danielle S. Futterman in Support of |

| Term | Definition |
|---|---|
| | Plaintiff's Application |
| **Mattel Products** | Plaintiff's children's toys, games, playthings, and other products, and/or its iconic sub-brands, including, but not limited to: Barbie, UNO, Thomas & Friends, Hot Wheels, Power Wheels, American Girl and Fisher-Price |
| **Power Wheels Products** | Battery-powered ride-on vehicles for toddlers and preschoolers, that come in a variety of models including cars, trucks and ATVs |
| **Power Wheels Marks** | U.S. Trademark Registration Nos.: 1,374,017 for "POWER WHEELS" for goods in Class 28; 1,671,657 for "POWER WHEELS" for goods in Class 9; 5,504, 969 for  for goods in Classes 9 and 28; and 5,763,877 for  for goods in Class 9 |
| **Fisher-Price Marks** | U.S. Trademark Registration Nos.: 3,279,454 for "FISHER-PRICE" for goods in Class 28 and 4,115,688 for "FISHER-PRICE" for "computerized online ordering services in the field of toys, games and playthings, electronic commerce services, namely, providing information about products via telecommunication networks for advertising and sales purposes" in Class 35 |
| **Mattel Marks** | The Power Wheels Marks and Fisher-Price Marks |
| **Plaintiff's Website** | Plaintiff's wholly owned subsidiary, Fisher-Price's fully interactive website, located at https://www.fisher-price.com |
| **Counterfeit Products** | Defendant's products advertised, offered for sale and/or sold by Defendant via Defendant's Website (as defined *infra*), which use the Mattel Marks, or at the very least, marks that are confusingly similar thereto |
| **Defendant's Website or Infringing Domain Name** | www.fisher-price.online |
| **Defendant's Assets** | Any and all money, securities or other property or assets of Defendant (whether said assets are located in the U.S. or abroad) |
| **Defendant's Financial Accounts** | Any and all financial accounts associated with or utilized by Defendant or any of Defendant's Website (whether said accounts are located in the U.S. or abroad) |
| **Financial Institutions** | Any banks, financial institutions, credit card companies and payment processing agencies, such as PayPal Inc. ("PayPal") and other companies or agencies that engage in the processing or transfer of money and/or real or personal property of Defendant |
| **Third Party Service** | Any third party providing services in connection with |

| Term | Definition |
|------|-----------|
| **Providers** | Defendant's Counterfeit Products and/or Defendant's Website, including, without limitation, Shopify, Internet Service Providers ("ISP"), back-end service providers, web designers, merchant account providers, any providing shipping and/or fulfillment services, website hosts (such as Cloudflare), domain name registrars (such as Dynadot) and domain name registries |

On this day, the Court considered Plaintiff's *ex parte* application for the following: 1) a temporary restraining order; 2) an order restraining Defendant's Website and Defendant's Assets with the Financial Institutions; 3) an order to show cause why a preliminary injunction should not issue; 4) an order authorizing bifurcated and alternative service; and 5) an order authorizing expedited discovery against Defendant, Third Party Service Providers and Financial Institutions in light of Defendant's intentional and willful counterfeiting and infringement of the Mattel Marks.[1]   Having reviewed the Application, Declarations of Michael Moore and Danielle S. Futterman, along with exhibits attached thereto and other evidence submitted in support thereof, the Court makes the following findings of fact and conclusions of law:

## FACTUAL FINDINGS & CONCLUSIONS OF LAW

1.      Mattel, through its family of companies, is a leading designer, developer, marketer, manufacturer and distributor of its well-known Mattel Products, including children's toys and games offered under some of America's most iconic and influential sub-brands, such as Barbie, UNO, Thomas & Friends, Hot Wheels, Power Wheels, American Girl and Fisher-Price.

2.      Since its founding in 1945, Mattel has been known for creating innovative Mattel Products and experiences that inspire, entertain, and empower children to develop through the world of play.

3.      Mattel sells its Mattel Products worldwide through major retailers, quality toy stores and online marketplaces, including, but not limited to: Wal-Mart, Target Stores, Walgreens, Amazon and many others.

4.      Mattel and its Mattel Products have been consistently recognized as leaders in the toy and entertainment categories.  For example, in 2020 alone, Mattel was recognized with a

---

[1] Where a defined term is referenced herein and not defined herein, the defined term should be understood as it is defined in the Glossary.

total of four prestigious Toy of the Year Awards at the 2020 Toy Association's annual Toy of the

Year Awards: Action Figure of the Year (for Disney and Pixar Toy Story Basic Figures), Game of

the Year (for Pictionary Air®), Infant/Toddler Toy of the Year (for Fisher-Price Linkimals®) and

Vehicle of the Year (for Hot Wheels® Mario Kart™ Assorted Vehicle).

5.      In addition, in 2021, Mattel was identified as one of TIME's 100 Most Influential

Companies.

6.      One of the most popular Mattel Brands is Power Wheels, battery-powered ride-

on vehicles for toddlers and preschoolers that come in a variety of models including cars, trucks

and ATVs. Mattel advertises, offers for sale and/or sells its Power Wheels Products through

Plaintiff's wholly owned subsidiary, Fisher-Price.

7.      Fisher-Price produces educational toys for infants, toddlers and preschoolers and

is a leading developer of character-based toys for children's programming such as Thomas &

Friends. Some of Fisher-Price's most popular brands include Power Wheels, Laugh & Learn, Little

People and Imaginext.

8.      Plaintiff's Fisher-Price website is available at https://www.fisher-price.com.

9.      The Power Wheels Products are sold by major U.S. retailers and e-commerce

sites, such as Amazon, Target and Walmart.

10.      The Power Wheels Products typically retail for between $49.99-499.99.

11.      While Plaintiff has gained significant common law trademark and other rights in

its Power Wheels Marks and Power Wheels Products through its and/or its predecessor's use,

advertising and promotion, Plaintiff has also protected its valuable trademark rights by both

acquiring and obtaining federal trademark registrations.

12.      For example, Plaintiff is the owner of the Power Wheels Marks (U.S. Trademark

Registration Nos.: 1,374,017 for "POWER WHEELS" for goods in Class 28; 1,671,657 for

"POWER WHEELS" for goods in Class 9; 5,504, 969 for **POWER WHEELS** for goods in Classes 9

and 28; and 5,763,877 for **POWER WHEELS** for goods in Class 9). Plaintiff is also the owner of the

Fisher-Price Marks (U.S. Trademark Registration Nos.: 3,279,454 for "FISHER-PRICE" for

goods in Class 28 and 4,115,688 for "FISHER-PRICE" for "computerized online ordering services

in the field of toys, games and playthings, electronic commerce services, namely, providing

information about products via telecommunication networks for advertising and sales purposes"

in Class 35), collectively referred to as the Mattel Marks.

13.     The Mattel Marks are currently in use in commerce in connection with the sale

of Power Wheels Products.

14.     Plaintiff has spent substantial time, money and effort in building up and

developing consumer recognition, awareness and goodwill resulting in prominent fame in its

Mattel Marks and Power Wheels Products.

15.     The success of the Power Wheels Products is due in part to Plaintiff's marketing

and promotional efforts, and high-quality Power Wheels Products.   These efforts include

advertising and promotion through television, print, Plaintiff's Website, among other efforts

domestically and abroad, including in New York.

16.     Plaintiff's success is also due to its use of the highest quality materials and

processes in making the Power Wheels Products, which meet or exceed U.S. standards.

17.     Additionally, Plaintiff owes a substantial amount of the success of the Power

Wheels Products to its consumers and word-of-mouth buzz that its consumers have generated.

18.     As a result of Plaintiff and its predecessor's efforts, the quality of its Power

3

Wheels Products and the word-of-mouth buzz generated by Plaintiff's consumers, the Mattel
Marks have become prominently placed in the minds of the public. Members of the public have
become familiar with the Mattel Marks and have come to associate them exclusively with Plaintiff.
Plaintiff has acquired a valuable reputation and goodwill among the public as a result of such
associations.

19.     Plaintiff has gone to great lengths to protect its interests in the Mattel Marks and
Power Wheels Products. No one other than Plaintiff is authorized to manufacture, import, export,
advertise, offer for sale or sell any goods utilizing the Mattel Marks, or otherwise use the Mattel
Marks, without the express permission of Plaintiff.

20.     Plaintiff is likely to prevail on its Lanham Act claims at trial.

21.     As a result of Defendant's infringements, Plaintiff, as well as consumers, are likely
to suffer immediate and irreparable losses, damages and injuries before Defendant can be heard in
opposition, unless Plaintiff's Application for *ex parte* relief is granted:

    a.  Defendant has offered for sale and/or sold substandard Counterfeit Products in
        connection with the Mattel Marks, without Plaintiff's authorization;

    b.  Plaintiff has well-founded fears that more of Defendant's Counterfeit Products will
        appear in the marketplace; that consumers may be misled, confused and disappointed
        by the quality of Defendant's Counterfeit Products, resulting in injury to Plaintiff's
        reputation and goodwill; and that Plaintiff may suffer loss of sales for its Power
        Wheels Products; and

    c.  Plaintiff has well-founded fears that if it proceeds on notice to Defendant on this
        Application, Defendant will: (i) secret, conceal, transfer or otherwise dispose of its
        ill-gotten proceeds from Defendant's Website and/or Defendant's Counterfeit

Products, and records relating thereto that are in its possession or under its control; (ii) secret, conceal, destroy, alter, sell-off, transfer or otherwise dispose of or deal with Counterfeit Products or other goods that infringe the Mattel Marks, the means of obtaining or manufacturing such Counterfeit Products, and records relating thereto that are in its possession or under its control, (iii) inform suppliers and others of Plaintiff's claims with the result being that those suppliers and others may also secret, conceal, sell-off or otherwise dispose of Counterfeit Products infringing the Mattel Marks, the means of obtaining or manufacturing such Counterfeit Products, and records relating thereto that are in its possession or under its control, and/or (iv) change the host of Defendant's Website, create new websites and/or new domain names through which Defendant will continue using the Mattel Marks, that are identical to, substantially indistinguishable from, or confusingly similar to, the Mattel Marks and/or offering for sale and selling Counterfeit Products with little to no consequence.

22.     The balance of potential harm to Defendant of being prevented from continuing to profit from its illegal and infringing activities if a temporary restraining order is issued is far outweighed by the potential harm to Plaintiff, its business, the goodwill and reputation built up in and associated with the Mattel Marks and to its reputation if a temporary restraining order is not issued.

23.     Public interest favors issuance of a temporary restraining order in order to protect Plaintiff's interests in and to its Mattel Marks, and to protect the public from being deceived and defrauded by Defendant's passing off of its substandard Counterfeit Products as Power Wheels Products, as those of Plaintiff.

24.     Plaintiff has not publicized its request for a temporary restraining order in any way.

25.     Service on Defendant via electronic means, including by e-mail service to xdgyatby@163.com, is reasonably calculated to result in proper notice to Defendant.

26.     If Defendant is given notice of the Application, it is likely to secret, conceal, transfer or otherwise dispose of its ill-gotten proceeds from its use, infringement, and counterfeiting of the Mattel Marks, and sales of Counterfeit Products or other goods infringing the Mattel Marks.  Therefore, good cause exists for granting Plaintiff's request for an asset restraining order.  It typically takes the Financial Institutions a minimum of five (5) days after service of the Order to locate, attach and freeze Defendant's Assets and/or Defendant's Financial Accounts.  As such, the Court allows enough time for Plaintiff to serve the Financial Institutions and Third Party Service Providers with this Order, and for the Financial Institutions and Third Party Service Providers to comply with the Paragraphs I(B)(1) through I(B)(2) and I(C)(1) through I(C)(2) of this Order, respectively, before requiring service on Defendant.

27.     Similarly, if Defendant is given notice of the Application, it is likely to destroy, move, hide or otherwise make inaccessible to Plaintiff the records and documents relating to Defendant's Website and/or Defendant's manufacturing, importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products. Therefore, Plaintiff has good cause to be granted expedited discovery.

## ORDER

Based on the foregoing findings of fact and conclusions of law, Plaintiff's Application is hereby **GRANTED** as follows:

### I.     Temporary Restraining Order

A.  IT IS HEREBY ORDERED, as sufficient cause has been shown, that Defendant is hereby
    restrained and enjoined from engaging in any of the following acts or omissions for fourteen

6

(14) days from the date of this Order, and for such further period as may be provided by order of this Court:

1) manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in Counterfeit Products;

2) directly or indirectly infringing in any manner Plaintiff's Mattel Marks;

3) using any reproduction, counterfeit, copy or colorable imitation of Plaintiff's Mattel Marks to identify any goods or services not authorized by Plaintiff;

4) using Plaintiff's Mattel Marks and/or any other marks that are confusingly similar to the Mattel Marks on or in connection with Defendant's Website and/or Defendant's manufacturing, importation, exportation, advertising, marketing, promotion, distribution, offering for sale, sale and/or otherwise dealing in Counterfeit Products;

5) using any false designation of origin or false description, or engaging in any action that is likely to cause confusion, cause mistake and/or to deceive members of the trade and/or the public as to the affiliation, connection or association of any product using Plaintiff's Mattel Marks and/or any other marks that are confusingly similar to the Mattel Marks manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale or sold by Defendant with Plaintiff, and/or as to the origin, sponsorship or approval of any product using Plaintiff's Mattel Marks and/or any other marks that are confusingly similar to the Mattel Marks manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale or sold by Defendant, website owned or operated by Defendant, services provided by Defendant and/or Defendant's commercial activities by Plaintiff;

6) secreting, concealing, destroying, altering, selling off, transferring and/or otherwise disposing of: (i) Counterfeit Products and/or (ii) any computer files, data, business records, documents or any other records or evidence relating to Defendant's Website, Defendant's Assets and/or the manufacturing, importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products;

7) effecting assignments or transfers, forming new entities or associations, or utilizing any other device for the purposes of circumventing or otherwise avoiding the prohibitions set forth in this Order;

8) linking, transferring, selling and/or operating Defendant's Website;

9) registering, trafficking in or using any domain names that incorporate any of Plaintiff's Mattel Marks, or any colorable imitation thereof, including the Infringing Domain Name; and

10) knowingly instructing any other person or business entity to engage in any of the activities referred to in subparagraphs I(A)(1) through I(A)(9) above, I(B)(1) through I(B)(2) and I(C)(1) through I(C)(2) below.

B. IT IS HEREBY ORDERED, as sufficient cause has been shown, that the Third Party Service Providers and Financial Institutions are hereby restrained and enjoined from engaging in any of the following acts or omissions for fourteen (14) days from the date of this order, and for such further period as may be provided by order of the Court:

1) secreting, concealing, transferring, disposing of, withdrawing, encumbering or paying Defendant's Assets from or to Defendant's Financial Accounts until further ordered by this Court;

2) secreting, concealing, destroying, altering, selling off, transferring and/or otherwise disposing of any computer files, data, business records, documents or any other records or evidence relating to Defendant's Assets and Defendant's Financial Accounts; and

3) knowingly instructing any person or business entity to engage in any of the activities referred to in subparagraphs I(A)(I) through I(A)(9), I(B)(1) through I(B)(2) above and I(C)(1) through I(C)(2) below.

C. IT IS HEREBY ORDERED, as sufficient cause has been shown, that the Third Party Service Providers are hereby restrained and enjoined from engaging in any of the following acts or omissions for fourteen (14) days from the date of this order, and for such further period as may be provided by order of the Court:

1) within five (5) days after receipt of service of this Order, providing services to Defendant, including, without limitation, those relating to the continued operation of Defendant's Website;

2) permitting the transfer, sale and/or assignment of Defendant's Website, including the Infringing Domain Name; and

3) knowingly instructing any other person or business entity to engage in any of the activities referred to in subparagraphs I(A)(1) through I(A)(9), I(B)(1) through I(B)(2) and I(C)(1) through I(C)(2) above.

## II.    Order to Show Cause Why A Preliminary Injunction Should Not Issue And Order Of Notice

A. Defendant is hereby ORDERED to show cause before this Court telephonically on December 6, 2021 at 10:00 a.m., why a preliminary injunction, pursuant to Fed. R. Civ. P. 65(a), should not issue.  Parties are directed to dial (888) 251-2909 and use access code 2123101.

9

B.  IT IS FURTHER ORDERED that opposing papers, if any, shall be filed electronically with

the Court and served on Plaintiff's counsel by delivering copies thereof to the office of Epstein

Drangel LLP at 60 East 42nd Street, Suite 2520, New York, NY 10165, Attn: Jason M. Drangel

on or before December 2, 2021.  Plaintiff shall file any Reply papers on or before December

3, 2021.

C.  IT IS FURTHER ORDERED that Defendant is hereby given notice that failure to appear at

the show cause hearing scheduled in **Paragraph II(A)** above may result in the imposition of a

preliminary injunction against them pursuant to Fed. R. Civ. P. 65, which may take effect

immediately upon the expiration of this Order, and may extend throughout the length of the

litigation under the same terms and conditions set forth in this Order.

### III.    Asset Restraining Order

A.  IT IS FURTHER ORDERED pursuant to Fed. R. Civ. P. 64 and 65 and N.Y. C.P.L.R. 6201

and this Court's inherent equitable power to issue provisional remedies ancillary to its authority

to provide final equitable relief, as sufficient cause has been shown, that within five (5) days

of receipt of service of this Order, the Financial Institutions shall locate and attach Defendant's

Financial Accounts and shall provide written confirmation of such attachment to Plaintiff's

counsel.

### IV.    Order Authorizing Bifurcated and Alternative Service by Electronic Means

A.  IT IS FURTHER ORDERED pursuant to Fed. R. Civ. P. 4(f)(3), as sufficient cause has been

shown, that service may be made on, and shall be deemed effective as to Defendant if it is

completed by the following means:

1)  delivery of: (i) PDF copies of this Order together with the Summons and Complaint, and

all papers filed in support of Plaintiff's Application seeking this Order, and (ii) a link to a

secure website (including NutStore, a large mail link created through Rmail.com and via

10

website publication through a specific page dedicated to this lawsuit accessible through ipcounselorslawsuit.com) where Defendant will be able to download PDF copies of this Order together with the Summons and Complaint, and all papers filed in support of Plaintiff's Application seeking this Order to Defendant's e-mail address, xdgyatby@163.com.

B.  IT IS FURTHER ORDERED, as sufficient cause has been shown, that such alternative service by electronic means ordered herein shall be deemed effective as to Defendant, Third Party Service Providers and Financial Institutions throughout the pendency of this action.

C.  IT IS FURTHER ORDERED, as sufficient cause has been shown, that such alternative service by electronic means ordered herein shall be made within five (5) days of the Financial Institutions and Third Party Service Providers' compliance with **Paragraphs III(A)** and **V(B)-(C)** of this Order.

D.  IT IS FURTHER ORDERED, as sufficient cause has been shown, that service may be made and shall be deemed effective as to the following if it is completed by the below means:

1)  delivery of: (i) a PDF copy of this Order, or (ii) a link to a secure website where PayPal Inc. will be able to download a PDF copy of this Order via electronic mail to PayPal Legal Specialist at EEOMALegalSpecialist@paypal.com;

1)  delivery of: (i) a PDF copy of this Order, or (ii) a link to a secure website where Dynadot will be able to download a PDF copy of this Order via electronic mail to abuse@dynadot.com;

2)  delivery of: (i) a PDF copy of this Order, or (ii) a link to a secure website where Cloudflare will be able to download a PDF copy of this Order via electronic mail to abuse@cloudflare.com;

11

## V.    Order Authorizing Expedited Discovery

A.  IT IS FURTHER ORDERED, as sufficient cause has been shown, that:

1) Within fourteen (14) days after receiving service of this Order, Defendant shall serve upon Plaintiff's counsel a written report under oath providing:

   a.  its true name and physical address;

   b.  the name and location and URL of any and all websites that Defendant owns and/or operates;

   c.  the complete sales records for any and all sales of Counterfeit Products, including but not limited to number of units sold, the price per unit, total gross revenues received (in U.S. dollars) and the dates thereof;

   d.  the complete sales records for any and all sales of Counterfeit Products made to consumers located in New York, including but not limited to number of units sold, the price per unit, total gross revenues received (in U.S. dollars) and the dates thereof;

   e.  the account details for any and all of Defendant's Financial Accounts, including, but not limited to, the account numbers and current account balances; and

   f.  the steps taken by Defendant, or other person served, to comply with **Section I** above.

2) Plaintiff may serve interrogatories pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure as well as Local Civil Rule 33.3 of the Local Rules for the Southern and Eastern Districts of New York and Defendant who is served with this Order shall provide written responses under oath to such interrogatories within fourteen (14) days of service to Plaintiff's counsel.

3) Plaintiff may serve requests for the production of documents pursuant to Fed. R. Civ. P. 26 and 34, and Defendant who is served with this Order and the requests for the production of documents shall produce all documents responsive to such requests within fourteen (14) days of service to Plaintiff's counsel.

B. IT IS FURTHER ORDERED, as sufficient cause has been shown, Plaintiff may serve subpoenas on the Financial Institutions to identify any and all of Defendant's Financial Accounts, and provide Plaintiff's counsel with a summary report containing account details for any and all such accounts, which shall include, at a minimum, identifying information for Defendant, including contact information for Defendant (including, but not limited to, mailing addresses and e-mail addresses), account numbers and account balances for any and all of Defendant's Financial Accounts and confirmation of said compliance with this Order, which subpoenas may be made returnable five (5) days after service.

C. IT IS FURTHER ORDERED, as sufficient cause has been shown, Plaintiff may serve subpoenas on the Third Party Service Providers to identify any and all of Defendant's Websites, and provide Plaintiff's counsel with a summary report, which shall include, at a minimum, identifying information for Defendant's Website (i.e., URLs), contact information for Defendant (including, but not limited to, mailing addresses and e-mail addresses) and confirmation of said compliance with this Order, which subpoenas may be made returnable five (5) days after service.

D. IT IS FURTHER ORDERED, as sufficient cause has been shown, that:

1) The subpoenas served on the Financial Institutions may require production within five (5) days after receipt, of all documents and records in their possession, custody or control

13

(whether located in the U.S. or abroad) relating to any and all of Defendant's Financial

Accounts, including, but not limited to, documents and records relating to:

    a.   account numbers;

    b.   current account balances;

    c.   any and all identifying information for Defendant and/or Defendant's Website, including, but not limited to, names, addresses and contact information;

    d.   any and all account opening documents and records, including, but not limited to, account applications, signature cards, identification documents and if a business entity, any and all business documents provided for the opening of each and every of Defendant's Financial Accounts;

    e.   any and all deposits and withdrawals during the previous year from each and every of Defendant's Financial Accounts and any and all supporting documentation, including, but not limited to, documents sufficient to identify the geographic location(s) of any consumers from which deposits were sent, deposit slips, withdrawal slips, cancelled checks and account statements; and

    f.   any and all wire transfers into each and every of Defendant's Financial Accounts during the previous year, including, but not limited to, documents sufficient to show the identity of the destination of the transferred funds, the geographic location(s) of the transferor(s), the identity of the beneficiary's bank and the beneficiary's account number.

E.  IT IS FURTHER ORDERED, as sufficient cause has been shown, that:

   1)  The subpoenas served on the Third Party Service Providers may require production within five (5) days after receipt, of all documents and records in their possession, custody or

control (whether located in the U.S. or abroad) relating to Defendant's Website, including, but not limited to, documents and records relating to:

    a.   account details, including, without limitation, identifying information and URLs for any and all accounts or websites that Defendant has ever had and/or currently maintains with the Third Party Service Providers that were not previously provided pursuant to Paragraph V(C);

    b.   the identities, location and contact information, including any and all e-mail addresses of Defendant that was not previously provided pursuant to Paragraph V(C);

    c.   the nature of Defendant's business and operations, methods of payment, methods for accepting payment and any and all financial information, including, but not limited to, information associated with Defendant's Website, a full accounting of Defendant's sales history and listing history under such accounts and Defendant's Financial Accounts with any and all Financial Institutions associated with Defendant's Website; and

    d.   Defendant's manufacturing, importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products, or any other products bearing the Mattel Marks and/or marks that are confusingly similar to, identical to and constitute an infringement of the Mattel Marks.

## VI.   **Security Bond**

A.  IT IS FURTHER ORDERED that Plaintiff shall place security in the amount of five thousand Dollars ($5,000.00) with the Court, which amount is determined adequate for the payment of

15

any damages any person may be entitled to recover as a result of an improper or wrongful restraint ordered hereunder.

## VII.    Sealing Order

A. IT IS FURTHER ORDERED that Plaintiff's Complaint and exhibits attached thereto, and Plaintiff's *ex parte* Application and the Declarations of Michael Moore and Danielle S. Futterman in support thereof and exhibits attached thereto and this Order shall remain sealed until the Financial Institutions and Third Party Service Providers comply with **Paragraphs I(B)-(C), III(A) and V(B)-(C)** of this Order.

**SO ORDERED.**

SIGNED this  22nd  day of  ___November___ , 2021, at  3:30  p .m.

_____
HON. LEWIS J. LIMAN
UNITED STATES DISTRICT JUDGE